| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **NOT FOR PUBLICATION** |

------------------------------------------------------- x
In re:                                                                      :
                                                                                  :       Case No. 23-11283 (JLG)
   Transfix Productions, LLC,                                  :       Chapter 7
                                                                                  :
                                                                                  :
                                                       Debtor.       :
------------------------------------------------------- x

### MEMORANDUM DECISION AND ORDER DENYING HEATHER GALLAGHER'S AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC STAY IN ORDER TO <u>PROCEED TO THE EXTENT OF DEBTOR'S INSURANCE PROCEEDS</u>

**A P P E A R A N C E S :**

LAW OFFICES OF CLAIRE COCHRAN, P.C.
*Attorney for Heather Gallagher*
100 Pine Street, Suite 1250
San Francisco, California 94111
By:     Claire Cochran


TARTER KRINSKY & DROGIN LLP
*Attorneys for Deborah J. Piazza, the Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
By:     Robert Wolf
            Jacob Gabor

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

Transfix Productions LLC (the "Debtor" or "Transfix") is a chapter 7 debtor herein. Deborah Piazza is the chapter 7 trustee of the Debtor's estate (the "Trustee"). Heather Gallagher ("Movant"), a former employee of the Debtor, filed a proof of claim for $281,603.00 for alleged unpaid wages and other damages.

On April 24, 2024, Movant filed a motion for relief from the automatic stay to sue the Debtor and its former chief executive officer, Michael Blatter ("Mr. Blatter"), in California state court (the "Motion").[2] She seeks to recover from the proceeds of the Debtor's Insurance Policy. The Trustee filed opposition to the Motion (the "Opposition" or "Opp.").[3] Movant filed a reply to the Opposition (the "Reply").[4]

The issue before the Court is whether cause exists to lift the automatic stay to allow Movant to litigate her claims in state court, and relatedly, whether the insurance proceeds she seeks to recover are property of the bankruptcy estate and protected by the automatic stay. The Court heard

---

[1] Terms used in this section, but not defined, have the same meanings as those defined below. References to "ECF No. __" are to documents electronically filed in Case No. 23-11283.

[2] *Notice of Amended Motion and Amended Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362, Amended Motion for Leave to Proceed to the Extent of Debtor's Insurance Proceeds*, ECF No. 44. The Motion is a corrected version of Movant's earlier motion filed on April 12, 2024, seeking the same relief. *See Motion for Relief from Stay*, ECF No. 42.

[3] *Chapter 7 Trustee's Opposition to Amended Motion of Heather Gallagher for Relief from the Automatic Stay in Order to Proceed to the Extent of Debtor's Insurance Proceeds*, ECF No. 53.

[4] *Notice of Claimant's Reply and Claimant's Reply to Trustee's Opposition to Amended Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. [sic] 362(a)*, ECF No. 57.

2

argument on the Motion. For the reasons set forth below, the insurance proceeds are property of the estate and there is no cause to lift the stay. Accordingly, the Court denies the Motion.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

Debtor was an entertainment company founded by Mr. Blatter, who also served as the company's chief executive officer. Transfix aimed to create immersive expositions displaying large-scale artwork with its first exposition scheduled to run in Las Vegas from April through October 2023. It opened as planned but closed in May 2023, less than 6 weeks after its debut.

On August 11, 2023 (the "Petition Date"), Transfix filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this Court.[5] Deborah Piazza was appointed as the chapter 7 trustee of the Debtor's estate. On August 14, 2023, the Clerk of the Court filed and mailed a notice to Transfix's creditors, including Movant, regarding possible dividend payments and set November 16, 2023 as the bar date to file a proof of claim against Transfix.[6] A total of 86 proofs of claim have been filed, aggregating over $8.4 million.

Movant claims she was hired by Mr. Blatter to help launch Transfix. On November 16, 2023, Movant, through counsel, filed Proof of Claim No. 74 (the "Gallagher Claim"), seeking

---

[5] *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1.

[6] *Notice of Possible Payment of Dividends and of Last Day to File Claims*, ECF No. 4. The notice was mailed to over 200 creditors on August 16, 2023. *Certificate of Mailing re: Notice of Possible Dividends*, ECF No. 6.

3

$281,603.00 for "[b]ack pay, lost wages, attorney's fees, [and] penalties." Gallagher Claim at 1–2. The claim included a spreadsheet detailing her underpayment of approximately $166,000 from April 2021 through August 2022, with a total of $181,603.38 through the Petition Date, and an additional $100,000 for wage and hourly penalties, attorney's fees, and compensation for her emotional distress. *Id.* at 4.

Transfix maintained an insurance policy for the period of December 6, 2022 through December 6, 2023, issued by Scottsdale Insurance Company on behalf of Nationwide (the "Insurance Policy"), which consisted of an Employment Practices Coverage Section ("EP Section") and a Directors and Officers and Company Coverage Section ("D&O Section"). Insurance Policy, Declarations at Item 3.[7]

On November 28, 2023, the Trustee notified Mr. Blatter and the agent of the Insurance Policy of the estate's claims against Mr. Blatter for breach of his fiduciary duties as Transfix's chief executive officer, asserting claims under the D&O Section, which the Trustee and Mr. Blatter have agreed to mediate.

To facilitate the mediation, Mr. Blatter filed a motion to lift the automatic stay for the limited purpose of allowing the Debtor's insurer to advance certain defense costs to Mr. Blatter

---

[7] The Insurance Policy is attached as Exhibit 1 to the *Motion of Michael Blatter for Relief from the Automatic Stay to the Extent Applicable*, ECF No. 46.

The Employment Practices Coverage Section covers claims made by employees. As relevant, the Insurance Policy includes coverage for claims of discrimination, harassment, and creation of a hostile work environment. EP Coverage Section ¶¶ B.6.a–c. It also covers wrongful firing, terminating employment contracts, and unfairly denying promotions or job opportunities. *Id.* ¶¶ B.6.d–f. It also covers "employment-related wrongful infliction of emotional distress." *Id.* ¶ B.6.j. In contrast, the Directors and Officers Coverage Section protects directors and officers against claims alleging wrongful acts. D&O Coverage Section ¶¶ A.1–2. The Insurance Policy defines a "Wrongful Act" broadly, including acts committed by directors or officers in their capacity as such, or in some circumstances, by the company itself. *Id.* ¶ B.9.

4

under the Insurance Policy (the "Blatter Motion"), which the Trustee did not oppose.[8] On July 8, 2024, the Court granted the Blatter Motion.[9]

**The Motion**

In the Motion, Movant seeks "leave to proceed against the insurance proceeds of Debtor [and] to proceed against Debtor only to the extent of available insurance coverage of any covered claims under the Insurance Policy." Motion at 7. Her draft complaint (the "Complaint")[10] generally alleges that the defendants, Debtor and Mr. Blatter, failed to pay her in accordance with California law; she asserts claims under California's labor law, its unfair business practices act, and a common law claim for intentional misrepresentation and fraud. The damages calculation in the Complaint matches the spreadsheet annexed to her proof of claim. *Compare* Complaint ¶ 104, *with* Gallagher Claim at 4.

Movant asserts that Transfix is insured through TriNet USA ("TriNet") for up to about one million dollars under an employment practices liability insurance policy in which it enrolled in August 2022, and maintains that her claim is covered by that policy. Motion at 6. She argues that there is cause to lift the automatic stay because her underlying allegations are unrelated to the reasons of Debtor's bankruptcy, granting relief would completely resolve her dispute, and fairness and equity weigh in favor of lifting the stay. *Id.* at 3–5.

---

[8] *Motion of Michael Blatter for Relief from the Automatic Stay to the Extent Applicable*, ECF No. 46.

[9] *Order Granting Motion of Michael Blatter for Relief from the Automatic Stay, to the Extent Applicable*, ECF No. 48.

[10] The Complaint is annexed to the Motion.

5

**The Opposition**

The Trustee argues that by filing the Gallagher Claim, Movant availed herself of the jurisdiction of this Court and is precluded from pursing the same claim in a California court. Opp. ¶ 10. The Trustee contends that litigating the claim in state court would essentially allow Movant to jump the line to recover against the estate's property to the detriment of the other claimants, and that cause does not exist to lift the stay. *Id.* ¶¶ 11–13.

The Trustee says that pursuant to Endorsement No. 44 of the Insurance Policy, the maximum liability amounts of the EP Section and D&O Sections are aggregated. *Id.* ¶ 18.[11] Therefore, she argues that if Movant were allowed to prosecute her state-court action, the Insurance Policy proceeds would be directed towards the Debtor's and Mr. Blatter's defense costs, as well as any potential judgment Movant might secure. *Id.* ¶¶ 18–19. The Trustee maintains that the amount of proceeds from the Insurance Policy available to satisfy the Trustee's claim against Mr. Blatter could be substantially reduced. *Id.* ¶ 19.[12]

**The Reply**

Movant states that she initiated legal action against the Debtor before the Petition Date by sending a demand letter on July 28, 2023.[13] She says that she filed the Gallagher Claim to preserve

---

[11] The Trustee is not aware of any insurance policy with TriNet. She bases her opposition on the understanding that the proceeds Movant seeks to recover are from the Insurance Policy. Opp. ¶ 19 n.3.

[12] The Trustee also argues that the Court should deny the Motion because Movant failed to provide adequate notice of the Motion to the other claimants in the case as required by Local Rule 9013-1(b). Opp. ¶¶ 20–23. She notes that of the then-84 claimants, only two receive electronic filings, meaning Movant should have served her Motion by mail to the remaining 82 claimants. *Id.* ¶ 22. The Court overrules the objection as moot. On August 30, 2024, Movant served the Motion on the remaining 82 claimants. *See Affidavit of Service*, ECF No. 55. This constitutes adequate notice under Local Bankruptcy Rule 9006-1(b).

[13] The demand letter is annexed as Exhibit A to the Reply.

6

her right to collect against the Debtor's assets in this case but maintains that her filing of the Gallagher Claim does not preclude her from initiating an action in California. Reply at 2–3.

Gallagher also argues that the proceeds of the Insurance Policy are not property of the estate. *Id.* at 3–5. She contends that by granting the Blatter Motion, the Court has already acknowledged that the automatic stay does not apply to proceeds from insurance policies. *Id.* at 4. Movant says it is as appropriate to provide Gallagher with access to the Insurance Policy's proceeds as it was to provide Mr. Blatter with access. *Id.* Further, she contends that the Trustee's decision to oppose the Motion but consent to the Blatter Motion "because they stood to benefit financially from the insurance proceeds if granted." *Id.* at 4.[14] Finally, she states, in a conclusory manner, that equity and priority justify granting relief from the automatic stay. *Id.* at 5.

## **LEGAL STANDARD**

### **The Automatic Stay**

The automatic stay is a fundamental principle of bankruptcy law. It is "designed to promote equal treatment among creditors and to provide the debtor with a breathing spell from the financial pressures which drove the debtor into bankruptcy." *In re Harris*, 424 B.R. 44, 52 (Bankr. E.D.N.Y. 2010) (quoting *In re Winer*, No. 08-40476, 2008 WL 2074091, at *3 (Bankr. E.D.N.Y. May 13, 2008)). The stay "also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others." *In re Killmer*, 501 B.R. 208, 212 (Bankr.

---

[14] The Court sees no need to address this argument at length except to repeat the observation that "[a] trustee has the statutory duty to protect and preserve property of the estate for the purpose of maximizing a distribution to creditors." *Pereira v. Foong (In re Ngan Gung Rest.)*, 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2000). The Trustee's attempt to conserve the proceeds of the Insurance Policy by opposing the Motion represents only her attempt to comply with this duty.

S.D.N.Y. 2013) (citing *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 586 (9th Cir. 1993)).

**Scope of the Automatic Stay**

The filing of a bankruptcy petition automatically stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . or to recover a claim against the debtor that arose before the commencement of the case," and "any act to obtain possession of property of the estate." 11 U.S.C. § 362(a)(1), (3). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1).

**Relief from the Automatic Stay**

Under section 362(d) of the Bankruptcy Code, a court must grant stay relief for "cause." *In re Zeoli*, 249 B.R. 61, 63 (Bankr. S.D.N.Y. 2000) (describing section 362(d) as "mandatory, not permissive"). The burden of demonstrating cause is on the movant. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). Once the movant demonstrates cause, the burden of proof shifts to the debtor. *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 321–22 (Bankr. S.D.N.Y. 2001); 11 U.S.C. § 362(g) (placing the burden of proof on the issue of the debtor's equity in collateral on the party requesting relief from the automatic stay, but the burden on other issues on the debtor).

Courts in the Second Circuit consider the *Sonnax* factors when deciding whether cause exists to lift the stay to permit litigation to proceed in another forum. *In re Sonnax Indus., Inc.*, 907 F.2d at 1285–86. This list of twelve factors is "non-exclusive and a court need not consider each factor in every case or give each factor the same weight." *Musso v. Hirsch*, No. 08-CV-4532, 2011 WL 4543225, at *6 (E.D.N.Y. Sept. 29, 2011).

8

## ANALYSIS

### Applicability of the Automatic Stay

Section 362(a)(1) stays the commencement or continuation of any action against the debtor that was or could have been commenced pre-petition. 11 U.S.C. § 362(a)(1). Movant seeks leave to bring a lawsuit in California against the Debtor and Mr. Blatter and asserts claims related largely to Movant's alleged unpaid and lost wages. She argues that the pursuit of her claims began pre-petition and predates the imposition of the automatic stay. Reply at 5. The alleged actions that form the basis of the Complaint all occurred before the Petition Date. This falls squarely within the scope of section 362(a)(1) as to the Debtor. Thus, the automatic stay applies as to the Debtor.

The Court does not need to decide whether section 362(a)(1) stays the action as to Mr. Blatter, because any action to obtain possession of the property of the estate—whether against a debtor or a third party—is stayed once a bankruptcy petition is filed. 11 U.S.C. § 362(a)(3). Here, Movant makes clear that she is not seeking to recover from Mr. Blatter personally, but only against the proceeds of the Insurance Policy. Therefore, if the proceeds are property of the Debtor's estate, the automatic stay bars the action.

### The Insurance Proceeds Are Property of the Estate

As a general matter, "it is well-settled that a debtor's liability insurance [policy] is considered property of the estate." *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012). However, the issue of whether such a policy's proceeds are property of the estate is unsettled. *Id.* (quoting *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010)). The issue becomes more complicated when, as here, the same finite pool of proceeds covers claims against both a debtor and non-debtor third parties.

9

In *Roman Catholic Diocese of Rockville Centre v. Ark320 Doe*, the Court considered whether a party's attempt to pursue state court actions against non-debtor entities would violate the automatic stay under section 362(a)(3) of the Bankruptcy Code based on the potential depletion of shared insurance proceeds. *Roman Cath. Diocese of Rockville Ctr. v. Ark320 Doe (In re Roman Cath. Diocese of Rockville Ctr.)*, 651 B.R. 622, 640 (Bankr. S.D.N.Y. 2023). Generally, in such cases, courts have held that "the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *In re MF Glob. Holdings Ltd.*, 469 B.R. at 191 (citing *In re Downey Fin. Corp.*, 428 B.R. at 603). Put simply, if an insurance policy covers potential liabilities that a debtor might otherwise pay from its other assets, the proceeds of that policy are property of the estate, since the insurance proceeds effectively preserve the value of the debtor's other assets by preventing them from being used to satisfy claims.

Consistent with this principle, in *Roman Catholic Diocese of Rockville Centre*, the Court recognized that the insurance proceeds constituted property of the estate because of the shared nature of the coverage. *Roman Cath. Diocese of Rockville Ctr.*, 651 B.R. at 645. However, the Court drew a distinction between the automatic stay's effect on insurance proceeds as property of the estate and actions that did not seek to obtain or control those proceeds. *Id.* at 644–45. The Court concluded that while actions to directly obtain or control the insurance proceeds would violate the automatic stay, the state court actions at issue in the case did not inherently seek relief that must be satisfied from insurance proceeds and were allowed to proceed. *Id.* at 645.

Here, Movant's contemplated California state court action inherently seeks to recover from the Insurance Policy, as she notes explicitly that she intends to seek "leave to proceed against the insurance proceeds of Debtor [and] to proceed against Debtor only to the extent of available

10

insurance coverage of any covered claims under the policy." Motion at 7. As for her recovery against Mr. Blatter, she notes that "Transfix is covered by Directors and Officers insurance, the very policy Movant helped acquire for Debtor during her employment." *Id.* at 6. Pursuant to Endorsement No. 44 of the Insurance Policy, the proceeds paid under the Insurance Policy's EP Section and D&O Section are subject to an aggregate limit. For that reason, even if Movant could recover against only either the Insurance Policy's EP Section or the D&O Section in her state court litigation, any dollar toward Movant's claim is a dollar that may not be available to the Debtor. If those proceeds were depleted, the Debtor's other assets would be used to satisfy the claims of some part of the other claimants. Thus, the proceeds of the Insurance Policy's EP Section and D&O Section are property of the estate.[15]

**Cause for Lifting the Stay**

As explained above, the party moving to lift the stay carries the burden of establishing cause under section 362(d). Moreover, as here, if the movant seeks stay relief to prosecute an unsecured claim, the movant's burden is especially heavy, and relief will only be granted in "extraordinary circumstances." *In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017).

Movant has not provided any justification for why her claims should be treated any differently than the claims of other unsecured creditors, especially those unsecured creditors that also assert claims for unpaid wages.

---

[15] Movant contends that in granting the Blatter Motion, the Court acknowledged that proceeds of the Insurance Policy are not property of the estate. Reply at 4. The Court made no such finding or acknowledgement; in fact, the Court ordered that "[n]othing herein shall constitute a finding by the Court that the proceeds of the Policy are or are not property of the Debtor's estate, and the Court makes no finding as to the applicability of the automatic stay imposed by 11 U.S.C. § 362(a) to the Policy Proceeds." *See Order Granting Motion of Michael Blatter for Relief from the Automatic Stay, to the Extent Applicable*, ECF No. 48, at ¶ 2.

*Sonnax Factors*

The Court addresses below only those factors addressed by the Motion and those which it deems most relevant here.

Factor 1: Whether Relief Would Result in Partial or Complete Resolution of the Issues

If Movant were to litigate its claims against the Debtor and Mr. Blatter in a California state court, that action would resolve whether Movant is entitled to unpaid wages or any other damages. The merits of the claims can be fully adjudicated in state court. This factor weighs in favor of stay relief.

Factor 2: Lack of Any Connection with or Interference with the Bankruptcy Case

Movant argues that the second factor weighs in her favor because the underlying basis of her claim is wholly unrelated to the reason Debtor filed bankruptcy. Motion at 3-4. However, what is relevant is not why the Debtor filed a petition for relief, but the connection or interference with the bankruptcy case itself. The available proceeds of the Insurance Policy are in the aggregate. Every dollar spent in litigating Movant's claims is a loss to the estate. To grant the Motion would stretch the limited proceeds further. This factor weighs against stay relief.

Factor 5: Whether the Debtor's Insurer Has Assumed Full Responsibility for Defending It

Movant contends that she is disadvantaged in arguing the applicability of factor 5 because she does not know the exact provisions of the Insurance Policy. Motion at 4. However, she maintains that her claims "are surely within the scope of coverage" in the Debtor's policy. *Id.* at 4. The issue, however, is whether the Debtor's insurer has assumed responsibility for the action. There is no evidence that it has, and as a result, the fifth *Sonnax* Factor does not support relief from the stay.

Factor 6: Whether the Action Primarily Involves Third Parties

Movant contends that the underlying action she seeks to pursue in California is unrelated to Debtor's bankruptcy and Movant and Debtor's insurance carrier are the only relevant parties. Motion at 4. The Court disagrees. Movant is not asserting any claims against the insurance carrier or naming them as a defendant in the action. Movant only names Debtor and Mr. Blatter in the Complaint. Additionally, Movant's claims are based entirely on her employment with the Debtor, and the Debtor thus features center in the action. *See generally* Complaint. This factor weighs against stay relief.

Factor 7: Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors

The other creditors' potential recovery would be diminished because the costs needed to defend against Movant's claims and any potential judgment in Movant's favor would be paid from the proceeds of the Insurance Policy and reduce the amount the Trustee can recover for the benefit of the other creditors. Additionally, Movant is not the only creditor who filed a claim for unpaid wages. These creditors would thus be prejudiced if the Motion were granted. This factor weighs against stay relief.

Factor 12: Impact of the Stay on the Parties and the Balance of Harms

Movant contends that lifting the stay would permit her to recover the relief "she is entitled to" under California law. Motion at 4. However, the potential harm to Movant is speculative because the merits of her claim are still to be determined. Moreover, Movant has not explained why any relief in this proceeding would be any less fulsome than that to which she would be entitled if permitted to proceed in California state court.[16] Movant is an unsecured creditor like

---

[16] Movant has already filed a proof of claim and availed herself of the court's jurisdiction. "Filing a proof of claim against a bankruptcy estate triggers the process of allowance and disallowance of claims, and, therefore, a creditor

13

many others. If the Court were to permit Movant to proceed in California state court, the Court would encourage other unsecured creditors to seek similar relief. The balance of harms weighs against stay relief.

Considered together, the *Sonnax* factors weigh against lifting the automatic stay.

**Equitable Relief from the Automatic Stay**

At oral argument, counsel for Movant argued that denying the Motion would be inequitable, given the Court's approval of the Blatter Motion for the same relief. Movant characterized Mr. Blatter as the "bad actor" and argued against allowing him to benefit while denying the same benefit to Movant, who considers herself a victim. However, this argument misrepresents the nature of the relief granted and is unpersuasive.

Mr. Blatter's motion did not seek personal recovery on a pre-petition claim. In granting the motion, the Court allowed the policy proceeds to be used to mediate the Trustee's substantial claim against Mr. Blatter. Any resulting recovery by the Trustee will benefit all creditors. In contrast, granting Movant's motion would permit her to pursue a lawsuit for unpaid wages, thus potentially prioritizing her claim over those of other former employees who have filed similar claims. This would undermine the automatic stay's basic purpose of ensuring equitable treatment among creditors.

---

who files such a claim subjects itself to the bankruptcy court's equitable jurisdiction in proceedings affecting that claim . . . [A] creditor loses its jury trial right with respect to claims whose resolution affects the allowance or disallowance of the creditor's proof of claim." *In re Bally Total Fitness of Greater New York, Inc.*, 411 B.R. 142 (S.D.N.Y. 2009) (quoting *In re CBI Holding Co.*, 529 F.3d 432, 466–67 (2d Cir. 2008)).

14

## CONCLUSION

For the reasons explained above, the Court denies the Motion.

IT IS SO ORDERED.

Date: September 21, 2024
      New York, New York

                                           /s/ *James L. Garrity, Jr.*
                                           Honorable James L. Garrity, Jr.
                                           United States Bankruptcy Judge